UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAM MICHAEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:04-cv-0977-DFH-WTL |
| ) | |
| UNITED TECHNOLOGIES CORP., ) | |
| ) | |
| Defendant. ) | |

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

On December 13, 1990, plaintiff Pam Michael was injured in a fork lift accident while on the job with Otis Elevator Company, a division of defendant United Technologies Corporation ("UTC"). Ms. Michael has received worker's compensation benefits, disability benefits from defendant's insurer, and Social Security disability insurance benefits to compensate her for her injury. UTC has denied her request for separate disability pension benefits under the company's retirement plan. UTC contends that Ms. Michael did not qualify for the disability pension benefits because she became disabled before she reached 10 years of continuous service with the company.

Ms. Michael has sued UTC for wrongfully denying her disability pension benefits. She seeks relief under the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. The parties have filed cross-motions for

summary judgment on Ms. Michael's ERISA claim for denial of benefits. In addition, Ms. Michael has filed a motion to amend her complaint to incorporate allegations that defendant distributed a misleading summary of benefits. Ms. Michael has also filed a motion to strike the administrative record that UTC filed in support of its motion for summary judgment and to substitute her own version of the administrative record. UTC has requested attorney fees. As explained below, the court grants UTC's motion for summary judgment and denies each of Ms. Michael's motions. The court also denies UTC's request for attorney fees.

I.   *Summary Judgment Standard*

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict. The question for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Only genuine disputes over material facts can prevent a grant of summary judgment. *Id.* at 248. The fact that both sides have filed cross-motions for

summary judgment does not alter the applicable standard; the court must consider each motion independently and will deny both motions if there is a genuine issue of material fact. *E.g., Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable trier of fact to find for the non-moving party. *Liberty Lobby*, 477 U.S. at 248.

II.     *Undisputed Facts*

The material facts of this case are not in dispute. On May 11 or 12, 1981, plaintiff Pam Michael began work as an assembler at Otis Elevator Company ("Otis"), a division of defendant United Technologies Corp. ("UTC"), in Bloomington, Indiana. A little more than nine and one-half years later, on December 13, 1990, she was involved in a forklift accident at Otis. The accident resulted in permanent injury to her right arm that rendered her permanently unable to do her job at Otis.

Ms. Michael attempted to return to work on two occasions following her accident. She returned for one day in December 1990 but went back on leave the next day. On either January 12 or 13, 1992, she worked for half of a day but was unable to complete her shift. Her employment with Otis officially terminated on that same day.

Ms. Michael has been found eligible for a number of different benefits because of her on-the-job injury. Immediately following her accident, Ms. Michael applied for and began receiving worker's compensation benefits for sustaining a 15 percent permanent impairment of her right arm. Ms. Michael also filed a claim for total and permanent disability benefits under the CIGNA Group Life Insurance Plan offered through UTC. She was awarded these benefits on December 23, 1992. AR-14. UTC asserts, and Ms. Michael does not dispute, that CIGNA deemed her disabled as of December 1990. AR-17. The Social Security Administration awarded her disability insurance benefits under the Social Security Act on August 22, 1992, finding that she became disabled on December 13, 1990, and was entitled to receive benefits as of June 1991. AR-13.[1]

On August 19, 1999, Ms. Michael received a letter from UTC indicating that she had fulfilled the eligibility requirements for a vested pension benefit with service credited through January 13, 1993. AR-3, -8. The vested pension benefit is offered through UTC's Represented Employee Retirement Plan ("Retirement Plan").

UTC's Retirement Plan also provides qualifying employees with a more generous disability pension benefit in certain circumstances. Ms. Michael first learned of the disability pension benefits offered through UTC's Retirement Plan

---

[1] All citations to "AR" correspond to the administrative record submitted by defendant UTC. See Attachment 1 to Def. Ex. A. The court addresses below plaintiff's disagreement with the use of defendant's record.

in June 2002. She immediately contacted UTC's Pension Center to request benefits. The applicable Retirement Plan states that an employee shall become eligible for a disability pension upon becoming "Totally and Permanently Disabled while employed by the Employer after completing at least 10 years of Continuous Service." Retirement Plan (effective Jan. 1, 1989), Table B-13. The Retirement Plan also states more specifically that "a Participant who incurs a disability while an Employee and who receives disability benefits under the Social Security Act subsequent to a disability date (as defined in Subsection (b), below) and after completing at least 10 years of Continuous Service shall be eligible to receive a disability benefit . . . ." *Id.* § 6.1(a). "Disability date" is defined as "the first day of the fifth month . . . before the month for which a Participant first receives a disability benefit under such Social Security Act." *Id.* § 6.1(b).[2]

On October 2, 2002, UTC denied Ms. Michael's request for disability pension benefits. Ms. Michael appealed this decision to the Benefit Claims Appeal Committee ("Appeal Committee") on February 18, 2003. The Appeal Committee also denied Ms. Michael's claim for benefits, reasoning that she became disabled before she had completed 10 years of service with Otis. The Appeal Committee provided the following explanation for its denial:

---

[2]Defendant has submitted two versions of the UTC Represented Employee Retirement Plan – a version effective January 1, 1989 and a version effective January 1, 2001. The plan provisions relevant to this dispute are identical in both versions. The court cites only the 1989 version for convenience.

-5-

> [T]he fact that [Ms. Michael] had over 10 years of continuous service when her employment finally terminated is irrelevant to the issue of her eligibility for a disability pension.  The only question at issue is whether Ms. Michael became Totally and Permanently Disabled after completing 10 years of continuous service. . . .  The administrative practice followed by the Retirement Plan for making that determination is to look at the claim incurred date under the CIGNA disability plan benefits, if any (not the date CIGNA payments begin) and the disability onset date of Social Security disability benefits (not the award date, which can often be years later).

AR-2 to -3.  Having exhausted her administrative remedies with UTC, Ms. Michael filed this lawsuit.  She contends that UTC violated the terms of the Retirement Plan, and she seeks relief under ERISA.

III.   *Discussion*

   A.   *Standard of Review*

The first issue is the applicable standard of review.  A decision to deny benefits will be reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan confers such discretionary authority, a denial of benefits will be reviewed to determine only whether the plan administrator's decision was " arbitrary" or "capricious."  *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 631 (7th Cir. 2004).  Under this more deferential standard, a court will not overturn the plan administrator's decision unless it is "downright unreasonable."  *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 660 (7th Cir. 1997),

citing *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994), quoting *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990).

To invoke the deferential "arbitrary and capricious" standard, the plan must clearly provide the administrator with discretionary authority in making the decision in question. There is no single formula or phrase needed to authorize the arbitrary and capricious standard of review, but the Seventh Circuit has held the following language sufficient to ensure such deferential review: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." See *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000).

UTC's Retirement Plan clearly vests similar discretionary authority in its plan administrator when interpreting arguable ambiguities in the plan. Section 10.5 of the Retirement Plan states that the Appeal Committee (as delegatee of the Pension Administration Committee) shall have:

> all implied powers and duties that are necessary or appropriate to carry out and administer the provisions of the Plan and shall have the following specific *discretionary* powers and duties: . . . (ii) to interpret the Plan and to decide any and all matters arising hereunder including to determine all questions relating to: (A) the eligibility of persons to receive benefits hereunder; . . . and, (C) all other matters upon which the benefits or other rights of a Participant or other person hereunder are based, and in so doing, without limitation, the power and the right to remedy possible ambiguities, inconsistencies, or omissions by general rule or particular decision.

Retirement Plan, § 10.5 (emphasis added).  This language requires that the court review the Appeal Committee's denial of Ms. Michael's claim for benefits under an arbitrary and capricious standard.  See, *e.g.*, *Ruiz v. Continental Casualty Co.*, 400 F.3d 986, 990 (7th Cir. 2005) (holding that the following language conferred discretionary authority subject to deferential review:  "When making a benefit determination under the policy, [Continental has] the discretionary authority to determine *Your* eligibility for benefits and to interpret the terms and provisions of the policy"); *Militello v. Central States, Southeast and Southwest Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004) (same for the following language: "Trustees are vested with discretionary and final authority in making all [plan-related] decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions construing plan documents of the Pension Fund").

Although the case management plan reflects the parties' agreement that the Retirement Plan authorizes only deferential review under the "arbitrary and capricious" standard, Ms. Michael argues on summary judgment that *de novo* review is appropriate because UTC may be self-insured and the Appeal Committee may be comprised of UTC employees.  She argues that the Appeal Committee therefore operates under a conflict of interest.

In *Firestone Tire & Rubber Co. v. Bruch,* the Supreme Court stated that a conflict of interest must be weighed as a factor in determining whether there has

been an abuse of discretion in the administrator's exercise of its discretionary authority. 489 U.S. at 115. The Seventh Circuit has accounted for conflicts of interest by noting that courts can apply a sliding scale of deference, with more penetrating judicial review when the suspicion of partiality is greater. See *Ruiz*, 400 F.3d at 991 n.1; *Manny v. Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds*, 388 F.3d 241, 242-43 (7th Cir. 2004). The Seventh Circuit has also emphasized, however, that plan participants must do more than merely speculate about an inherent conflict of interest. Courts will "presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict." *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998) (fact that insurer both interpreted policy and paid benefits out of its own assets did not warrant stricter review because "the impact on the company's welfare of granting or denying benefits under a plan was not sufficiently substantial to threaten an administrator's impartiality"); see also *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005) (declining to revisit rule set forth in *Mers*).

In this case, Ms. Michael has not come forward with any evidence of an actual conflict of interest that might warrant a heightened standard of review of the Appeal Committee's decision. She has merely speculated that UTC might be self-insured and that the Appeal Committee members are employed by UTC. This speculation is not supported by evidence, nor would it necessarily threaten the

impartiality of the Appeal Committee if true. Because Ms. Michael has not provided specific evidence of actual bias, the court applies the arbitrary and capricious standard of review.[3]

B.   *Plaintiff's Other Motions*

Under the arbitrary and capricious standard of review, the court may consider only evidence that was before the plan administrator when it made its decision. See *Militello*, 360 F.3d at 686. In other words, the court's review of the administrator's decision is limited to the administrative record. *Vallone*, 375 F.3d at 629 ("Deferential review of an administrative decision means review on the administrative record."), quoting *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999).

Ms. Michael has moved to strike the administrative record used in support of defendant's motion for summary judgment and to substitute her own version of the record for the court's consideration. She argues that UTC improperly omitted from its record the Retirement Digest, a document produced and distributed by UTC to assist employees in understanding the company's retirement plan. She contends that the language of the Retirement Digest demonstrates that she is entitled to disability pension benefits.

---

[3]Because of the lack of support for the argument, the court need not rely on the belated presentation of the claim after plaintiff agreed that review should be under the "arbitrary and capricious" standard.

Ms. Michael argues that the Retirement Digest should be part of the administrative record because it was included in the materials sent by defendant's counsel to her counsel on October 27, 2004, which were described by defendant's counsel as "a copy of the administrative file pertaining to this case." See Pl. Ex. A, Bonnell Aff. She argues that this statement amounts to a admission by UTC that the Retirement Digest was part of the administrative record. She claims that she learned only much later (in April 2005) that defendant intended to omit the Retirement Digest from its administrative record. Based on these events, Ms. Michael accuses UTC of "abusing the record" by "hiding the ball" and "conveniently ignoring" information she believes is critical to her case.

In reviewing a denial of benefits under a discretionary plan, the court should consider only those materials actually considered by the administrator in reaching its decision. See *Perlman,* 195 F.3d at 982. Ms. Michael does not argue that the plan administrator actually considered the Retirement Digest in reaching its decision. In fact, the undisputed testimony of UTC's research service is that the Appeal Committee reviewed the materials found in defendant's version of the administrative record, which does not include the Retirement Digest. See Def. Ex. A, Ruiz Aff.

UTC points out that the materials it provided to Ms. Michael's counsel in October 2004 were part of its document production during discovery, and included a number of documents outside of the actual administrative record

considered by the Appeal Committee. See Def. Reply Br. at 4, n.2. Defendant's characterization of these materials as the "administrative file," without more, does not create a genuine issue of fact as to whether the materials constitute the official administrative record. Further, Ms. Michael cites no authority for the remarkable proposition that UTC should be estopped from excluding the Retirement Digest from its administrative record merely because her counsel had assumed it would be included, let alone because the document was responsive to a discovery request.

Ms. Michael also argues that UTC *should have* considered the Retirement Digest as part of her claim determination because she and other employees relied upon it to understand their benefits under the company's retirement plan. Ms. Michael claims that she herself relied on the Retirement Digest in *submitting* her request for disability pension benefits. If the Retirement Digest contradicts the Retirement Plan on certain aspects of benefit eligibility, as Ms. Michael contends, she could argue that UTC misled its employees and/or should be estopped from making benefit determinations based solely on the terms of the Retirement Plan.

To prevail on an estoppel claim brought under ERISA, a plaintiff must demonstrate: (1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance by the plaintiff on that misrepresentation; (4) to the plaintiff's detriment. *Vallone*, 375 F.3d at 639. ERISA estoppel has "a narrow scope" and is available only in "extreme circumstances." *Id.* Similarly, to prevail on a claim

for breach of fiduciary duty under ERISA, a plaintiff must demonstrate that a fiduciary misled plan participants or misrepresented the terms or administration of the plan. *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000).

Ms. Michael's claim of estoppel does not survive summary judgment. First, there is no evidence of a misrepresentation. The Retirement Digest states: "If you are permanently and totally disabled at any age after you complete 10 or more years of credited service, you will receive a pension from the plan . . . ." Pl. Ex. B. at 14. This language is consistent with the denial of benefits for Ms. Michael because she became disabled before she completed 10 years of credited service. It is also consistent with the terms of the Retirement Plan, except for the substitution of the term "credited service" for "continuous service," which is inconsequential to her situation because of another provision in the Retirement Digest permitting her break period and post-disability service to be counted toward "credited service." See Pl. Ex. B. at 17. Accordingly, no reasonable fact-finder could conclude that the Retirement Digest misleads plan participants or misrepresents information contained in the Retirement Plan.

Second, there is no evidence that Ms. Michael relied on the Retirement Digest to her detriment. The only action she claims to have taken in reliance on her interpretation of the Retirement Digest is to apply for benefits. She has not identified anything else she did differently because of the Retirement Digest other than simply applying for benefits. See Pl. Ex. C, Michael Aff. ¶ 9; Pl. Motion to

Amend ¶ 4. She does not suggest that she claimed disability and left work at Otis because she believed she was entitled to receive a disability pension or that she otherwise altered her conduct because of the statement in the Retirement Digest. For the same reason, Ms. Michael would be unable to prove any harm resulting from an alleged breach of fiduciary duty. Accordingly, her claim for estoppel or breach of fiduciary duty fails on summary judgment.[4]

      C.    *Review of Plan Administrator's Decision*

Under the arbitrary and capricious standard, an administrator's decision to deny benefits will not be overturned if (1) it is possible to offer a reasoned explanation based on the evidence for a particular outcome; (2) the decision is based on a reasonable explanation of relevant plan documents; or (3) the administrator has based its decision on a consideration of the relevant factors that encompass important aspects of the problem. *Militello*, 360 F.3d at 686. A plan administrator's decision to deny a claim for benefits is entitled to "great deference" under the arbitrary and capricious standard. *Ruiz*, 400 F.3d at 991, quoting *Blickenstaff v. R.R. Donnelly & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 677 (7th Cir. 2004). Put another way, the court will not disturb the plan

---

[4]Because this theory fails on its merits, the court does not base its decision on whether Ms. Michael raised her claim in a proper procedural manner. Her motion to amend her complaint is denied because it was either futile or unnecessary. If the amendment would be deemed necessary to assert the claim, her amendment would be futile because she has no evidence of a misrepresentation or detrimental reliance. If the amendment would be deemed unnecessary, UTC is still entitled to summary judgment on the theory.

administrator's decision unless it is "downright unreasonable." *Brehmer*, 114 F.3d at 660.

UTC's decision to deny disability pension benefits to Ms. Michael is clearly based on a reasonable interpretation of its Retirement Plan. Ms. Michael argues that the Plan's definition of "Continuous Service" as "the aggregate period of an Employee's uninterrupted employment with the Employer commencing on the day an Employee first completes an Hour of Service . . . and ending on the date of termination of employment" requires that her overall time of service be aggregated for purposes of applying the disability pension benefits provisions. See Retirement Plan, § 3.3(a). She points out that she completed more than 10 years of service with Otis, calculated from her date of hire in 1981 until her official termination in 1992.

Under the plain language of the Retirement Plan, "a Participant who incurs a disability while an Employee and who receives [Social Security] benefits . . . subsequent to a disability date . . . and after completing at least 10 years of Continuous Service" is eligible for disability pension benefits. Retirement Plan, § 6.1(a). The Plan states elsewhere that an employee is eligible for such benefits upon becoming "Totally and Permanently Disabled while employed by the Employer after completing at least 10 years of Continuous Service." *Id.* Table B-13. Based on these consistent provisions, it is perfectly reasonable for UTC to require that participants have completed 10 years of service before becoming

disabled, and not simply that they accrue 10 years of service before applying for benefits or before being awarded benefits. If the administrator's decision is based on a reasonable interpretation of plan documents, it is not the court's function to decide whether it would have interpreted the plan differently or whether it would have relied upon different authority. *Mers*, 144 F.3d at 1021. Because Ms. Michael became disabled nine and one-half years into her career with Otis, under UTC's interpretation of the Retirement Plan, UTC reasonably concluded that she was not entitled to disability pension benefits.

The fact that Ms. Michael has received other types of benefits from UTC and its insurer does not undercut UTC's interpretation. The criteria for receiving total and permanent disability benefits through CIGNA's life insurance plan are not identical to the criteria for receiving disability pension benefits. The CIGNA plan does not require completion of 10 years of service. It requires only that the employee become totally disabled while in active service with the employer prior to age 60. See Pl. Ex. B at 210. The requirements for receiving a vested pension benefit under UTC's Retirement Plan also do not match the requirements for receiving disability pension benefits. A plan participant may be eligible for a vested pension benefit, but not a disability pension benefit, if her total years of service (by bridging disability leave or applying special layoff provisions) exceed 10 years even though she did not complete 10 years of continuous service before becoming disabled. See, *e.g.*, *Urbania v. Central States, Southeast and Southwest Areas Pension Fund*, 421 F.3d 580, 585 (7th Cir. 2005) (holding that more than

10 years of "vested service" could not satisfy "credited service" requirement to qualify for disability pension benefit when the two were calculated differently under the plan). This same difference might have allowed an individual to maintain her seniority and other employment benefits until her official termination if she had been able to return to work after a temporary disability. Ms. Michael's case illustrates these different requirements for the different benefits offered by UTC.

In sum, the Appeal Committee's determination that the Retirement Plan requires 10 years of service prior to becoming disabled to qualify for disability pension benefits cannot be characterized as arbitrary and capricious. Its decision to deny Ms. Michael's benefits must stand.

### D. *Attorney Fees*

In an ERISA action brought by a plan participant, the court may award reasonable attorney fees and costs to either party that prevails. See 29 U.S.C. § 1132(g)(1). There is a modest presumption in favor of awarding fees to the prevailing party, but this presumption can be rebutted. *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001). A successful defendant may be denied an award of fees if the plaintiff's position was both "substantially justified" (meaning something more than non-frivolous, though not meritorious)

and taken in good faith, or if special circumstances would make an award unjust. *Id.*[5]

UTC argues that Ms. Michael's position was not substantially justified because she "repeatedly . . . persisted in making the same defective argument." See Def. Rep. Br. at 10. However, Ms. Michael's suggested interpretation of the Retirement Plan is not altogether unreasonable. Ms. Michael argued in good faith that the Plan's terms, combined with the fact that she ultimately completed 10 years of service with Otis and had been awarded several other benefits because of her injury, entitled her to disability pension benefits. Although the court must ultimately defer to UTC's interpretation, Ms. Michael's actions in this lawsuit do not indicate that she brought suit simply to harass UTC. Cf. *Stark v. PPM America, Inc.*, 354 F.3d 666, 673 (7th Cir. 2004) (affirming attorney fee award where plaintiff made no attempt to exhaust plan remedies and took "a good deal of time to settle on a basis for his claim for benefits"). Accordingly, the court exercises its discretion not to award attorney fees to UTC.

---

[5] A second test has sometimes been used in this circuit to determine if a prevailing party is entitled to attorney fees in an ERISA action. That test considers: (1) the degree of the offending party's culpability or bad faith; (2) the offending party's ability to satisfy an award of fees; (3) whether the award of fees would deter other persons under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions. See *Senese*, 237 F.3d at 826 n.4; see also *Bowerman*, 226 F.3d at 592-93. As is evident by its terms, this test is most relevant when the plaintiff is the prevailing party. Even if applied here, it would not warrant awarding attorney fees to UTC.

-18-

IV.     *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment (Docket No. 39) is GRANTED and plaintiff's motion for summary judgment (Docket No. 51) is DENIED.  Plaintiff's motion to strike defendant's designation of evidence (Docket No. 49) and motion to amend her complaint (Docket No. 50) are also both DENIED.  Final judgment shall be entered accordingly.

So ordered.

Date: January 18, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael K. Bonnell
mkbonnell@hotmail.com

Glenn W. Dowd
DAY BERRY & HOWARD LLP
gwdowd@dbh.com

Sarah Christine Moore Fass
DAY BERRY & HOWARD LLP
smfass@dbh.com

Alan K. Mills
BARNES & THORNBURG LLP
alan.mills@btlaw.com